```
               IN THE UNITED STATES DISTRICT COURT
                FOR THE SOUTHERN DISTRICT OF OHIO
                          EASTERN DIVISION
```

Lisa Rainer,                     :

      Plaintiff,               :

      v.                       :     Case No. 2:05-cv-0859

Refco, Incorporated, et al.,     :     MAGISTRATE JUDGE KEMP

      Defendants.              :

<u>OPINION AND ORDER</u>

      Plaintiff, Lisa Rainer, filed this employment discrimination action against Refco, Incorporated, her former employer. She also named two individuals, William Sekeras and Robert Maloy, as defendants. Her original complaint pleaded federal and state employment discrimination and retaliation claims against Refco and alleged that the two individual defendants were liable along with Refco on her state law claims. Her amended complaint added two claims against Refco under the Family Medical Leave Act.

      After discovery was completed, all defendants moved for summary judgment. Responsive and reply memoranda have been filed. Additionally, Ms. Rainer filed a motion to strike the reply memorandum, or, in the alternative, to file a sur-reply, arguing that Refco raised issues for the first time in its reply memorandum which were not addressed in its original motion for summary judgment. For the following reasons, both the motion for summary judgment and the motion to strike will be denied.

                                       I.

      Summary judgment is not a substitute for a trial when facts material to the Court's ultimate resolution of the case are in dispute. It may be rendered only when appropriate evidentiary materials, as described in Fed. R. Civ. P. 56(c),

demonstrate the absence of a material factual dispute and the moving party is entitled to judgment as a matter of law. Poller v. Columbia Broadcasting Systems, Inc., 368 U.S. 464 (1962). The moving party bears the burden of demonstrating that no material facts are in dispute, and the evidence submitted must be viewed in the light most favorable to the nonmoving party. Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970). Additionally, the Court must draw all reasonable inferences from that evidence in favor of the nonmoving party. United States v. Diebold, Inc., 369 U.S. 654 (1962). The nonmoving party does have the burden, however, after completion of sufficient discovery, to submit evidence in support of any material element of a claim or defense on which that party would bear the burden of proof at trial, even if the moving party has not submitted evidence to negate the existence of that material fact. See Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). Of course, since "a party seeking summary judgment ... bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact," Celotex, 477 U.S. at 323, the responding party is only required to respond to those issues clearly identified by the moving party as being subject to the motion. It is with these standards in mind that the instant motion must be decided.

II.

The parties have the supplied the Court a plethora of deposition transcripts, affidavits, and other documents as attachments to the memoranda filed. Under the above legal standard, the question before the Court is whether the evidence in those various documents which favors Ms. Rainer's position on

her various legal claims is sufficient to create a triable issue of fact with respect to each of those claims.  If the evidence is in conflict, and a jury could believe either the evidence favoring Ms. Rainer's claims or favoring Refco's position, there is a triable issue of fact and summary judgment may not be granted.  The following is a summary of the pertinent evidence.

Until February 17, 2005, Ms. Rainer worked for Refco, first as a human resources administrator and later as a plant manager at Refco's Wellston, Ohio plant.  She testified that she was hired by a gentleman named Tony Lambert.  Although her work as a plant manager originally went well, problems developed during calendar year 2004.  According to Ms. Rainer, those problems consisted primarily of insubordination and harassment from people she supervised at the plant, including particularly Robert Washburn.  According to Refco, the problems consisted primarily of Ms. Rainer's favoritism towards two individuals that she had hired coupled with morale and production issues at the plant.

For some period of time, Refco had employed defendant Maloy to consult with Kevin Lucas, Refco's sole shareholder, about capital improvements and other capital expenditures at the Wellston plant.  Mr. Maloy testified in his deposition that in 2004 he began to notice other issues at the plant based upon complaints which plant employees directed to him.  As a result, Mr. Lucas asked Mr. Maloy to conduct an investigation to determine what was happening at the plant.

According to Refco, one of the major issues at the plant was an unprecedented buildup in the amount of scrap material which was being discarded.  Such a buildup could indicate that poor quality control was being practiced at the plant and that money was being wasted because items were not being manufactured properly.  Refco also experienced some cash flow problems in 2004.  There is a dispute concerning whether these cash flow

problems resulted from the buildup of scrap or from a significant cash outlay which Refco made in order to perform one particular contract.

Mr. Maloy conducted some type of investigation at the Refco plant in the latter part of 2004. The "investigation" included talking to workers who had complaints about Ms. Rainer's management style and other issues at the plant, but did not include any discussions with her. According to Mr. Maloy, by December, 2004, he had decided that Ms. Rainer's employment should be terminated, and he recommended that action to Mr. Lucas.

Mr. Sekeras was Ms. Rainer's immediate supervisor. The parties apparently agree that he and Ms. Rainer had a good relationship until February 4, 2005. On that date, Mr. Sekeras changed Ms. Rainer's job assignment from plant manager to manager of administration. He reassigned her production supervision duties to another Refco employee, Rob Timms. He apparently took that action without consulting with Mr. Lucas and without the endorsement of Mr. Maloy. In an e-mail to Mr. Lucas written a week later, Mr. Maloy again recommended that Ms. Rainer's employment be terminated along with two subordinates who were viewed as her "favorites." Mr. Lucas agreed, and on February 17, 2005, Ms. Rainer's employment with Refco was terminated.

According to Ms. Rainer, who swore to the following both in an affidavit and at her deposition, Mr. Maloy had said for some time that Refco was going to be sold and that it was important that a man be in the plant manager position in order to attract potential buyers. She had not heard the same type of comments from Mr. Sekeras, but when he told her on February 4, 2005 that she was being reassigned, he explained that a man was needed to take over her position in order to "stop all the crap" that was occurring at the plant. She took his statement to refer to the

insubordination and negative comments made by Mr. Washburn and others.  Ms. Rainer stated that she had attempted to obtain help in dealing with those issues in the past but that Refco never supplied her with such help.  When she told Mr. Sekeras that his action "smacked of discrimination," he became hostile.  She was fired less than two weeks later.  According to Mr. Lucas, he did not approve of the decision to demote rather than to fire Ms. Rainer, and he concurred in Mr. Maloy's recommendation that she be fired.  Mr. Maloy also recommended, in a February 11, 2005 e-mail, that the company be placed up for sale and that he hoped that Mr. Sekeras had not already discussed with a potential buyer any arrangements which would continue Ms. Rainer in Refco's employment.

In its interrogatory answers, Refco swore that Mr. Sekeras made the decision to terminate Ms. Rainer's employment.  It stated that Mr. Sekeras discussed the matter with Mr. Lucas and that Mr. Maloy "consulted" with both of them with respect to the decision.  However, Mr. Lucas testified in his deposition that Mr. Sekeras did not specifically recommend Ms. Rainer's termination but that Mr. Maloy had made that recommendation consistently throughout 2004 and into 2005.  Refco also indicated in interrogatory answers that the reason it took an adverse job action against Ms. Rainer, particularly her reassignment to another position, was because of ongoing and deteriorating operation and production problems and conditions at the Wellston plant.  Mr. Sekeras' letter of February 4, 2005, in which he announced the reshuffling of personnel at the plant, described a cash flow problem at Refco resulting from a decision to "bring in tabular alumina early to save from having to pay twenty-eight percent more due to a price increase effective January 1, 2005."  Mr. Sekeras indicated that those early shipments and "heavy mold costs in pre-casts to grow the business resulted in the shortage

of cash." He also noted, however, the company was healthy from an earnings standpoint and the banks were satisfied with the company's financials. Ms. Rainer testified that she was never told of any financial problems or other problems relating directly to the way in which she was operating or managing the plant. In particular, she was never told that the buildup of scrap was a problem. In fact, she testified that before she implemented a system for tracking scrap, no one knew how much scrap had accumulated from time to time, so that there could not have been a reasoned comparison made between the amount of scrap produced at the plant prior to her tenure as plant manager and the amount which accumulated while she was running the operation. Finally, she testified that Mr. Sekeras' attitude towards her changed completely after she made her discrimination comment to him on February 4, 2005, and that he was hostile to her thereafter.

### III.

Under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e *et seq.*, every individual seeking employment, seeking advancement in employment, or being considered for termination of his or her employment, is entitled to be judged by, *inter alia*, racially or gender-neutral employment standards and practices. The Supreme Court established a framework for evaluating Title VII claims in <u>McDonnell-Douglas v. Green</u>, 411 U.S. 792, 799 (1973). According to that decision, an individual can demonstrate a <u>prima</u> <u>facie</u> case of discrimination by showing the following:

   (1)   Membership in a protected class;

   (2)   Having made application, and being qualified, for a job for which the employer sought applicants, or being qualified either to continue in employment or for a promotion;

   (3)   An adverse job action such as failure to hire,

>       failure to promote, demotion or termination; and
>
> (4)   The position remaining open for similarly qualified
>       applicants, or, in the case of a termination,
>       replacement by a person outside the suspect class at
>       issue.

Id. at 802.

Once a Title VII claimant has made the prima facie showing described above, the burden of producing evidence shifts to the employer.  The employer is required to articulate with some precision a legitimate, non-discriminatory reason for the adverse job action taken.  Once such a reason is articulated, the claimant is then obligated to persuade the Court either that the reason given was insufficient to support the adverse job action, or that it was not the real reason that the action was taken.  An employer may not use a purportedly non-discriminatory reason for an adverse job action as a pretext for racial discrimination. Id. at 804.  However, the burden is on the plaintiff to prove that a reason is pretextual by a preponderance of the evidence, a burden which is consistent with the plaintiff's ultimate burden of persuasion in a Title VII case.  Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 252-253 (1981).  Once a plaintiff has established a prima facie case, and the employer has articulated a sufficiently specific and facially legitimate, non-discriminatory reason for its action, all presumptions drop out of the case, and the action is decided in the same manner as any other civil action.  United States Postal Service Board of Governors v. Aikens, 460 U.S. 711, 715 (1983).

Several additional legal principles also apply.  First, a plaintiff may, but need not, present direct evidence of an intent to discriminate.  Id. at 717.  If direct evidence of discrimination is presented, the McDonnell-Douglas analysis of a prima facie case is inapposite.  Bell v. Birmingham Linen

7

Service, 715 F.2d 1552 (11th Cir. 1983), cert. denied, 467 U.S. 1204 (1984).  Otherwise, the plaintiff can make a circumstantial case of discrimination through the McDonnell-Douglas prima facie case and through additional evidence that the non-discriminatory reason advanced by the defendant is merely a pretext.  See, e.g., Jackson v. Pepsi-Cola, Dr. Pepper Bottling Co., 783 F.2d 50 (6th Cir. 1986); Henry v. Lennox Industries, Inc., 768 F.2d 746 (6th Cir. 1985).  Such evidence can include statistical evidence or evidence as to the employer's general policies or practices relating to minority employment.  McDonnell-Douglas, supra, at 804-05.  A showing that an employer's standard operating procedure for employment decisions, generally, involved racial discrimination is evidence probative of its intent against a particular employee or applicant in a particular hiring context.  Bazemore v. Friday, 478 U.S. 385 (1986)(per curiam).

It bears noting that Title VII does not prohibit illogical or unsound hiring decisions, but only those which are improperly motivated by race or other suspect classification.  If the employer's true reason for acting is irrational, but the trier of fact is ultimately not persuaded that it is merely a pretext for an unlawful discriminatory decision, relief is not available under Title VII:

> "It is enough for the defendants...to bring forth evidence that they acted on a neutral basis.  They do not have the burden of establishing that their basis was sound; rather, the burden then falls on the plaintiff to demonstrate that it is pretextual."

Lieberman v. Gant, 630 F.2d 60, 65 (2nd Cir. 1980).  Even if the plaintiff proves pretext, the trier of fact retains the discretion to find an absence of discrimination.  A finding that the proffered reasons for the employer's actions are not the real reasons permits, but does not require, the Court to find in

plaintiff's favor.  St. Mary's Honor Center v. Hicks, 509 U.S. 502 (1993).  Nevertheless, when there is evidence from which the trier of fact could find that the proffered reasons are pretextual, summary judgment in the employer's favor is ordinarily not appropriate.  See Manzer v. Diamond Shamrock Chemicals Co., 29 F.3d 1078 (6th Cir. 1994).  It is with these guiding principles in mind that the facts of this particular case are analyzed.

IV.

Turning first to whether plaintiff has established the elements of a prima facie case, Refco appears to concede for summary judgment purposes that there is at least a factual dispute on that issue.  Clearly, Ms. Rainer was subjected to an adverse job action, and her job duties were assumed by a man.  There appears to be no question that she continued to be qualified for the plant manager position, having performed it for a number of years.  Under those circumstances, the Court's analysis begins with the question of whether Refco has articulated a legitimate non-discriminatory reason for her discharge.

In its interrogatory answers, Refco asserted that Ms. Rainer was discharged because of problems at the Wellston plant.  That answer was corroborated by Mr. Sekeras and Mr. Maloy, both of whom testified that there were issues at the plant involving Ms. Rainer's management style and production problems which, in their view, were costing Refco money.  The failure to perform up to expectations is a legitimate reason for discharge.  Consequently, the key question for summary judgment purposes is whether the trier of fact could conclude, based on evidence in the record, that Refco's reasons were simply a pretext for discrimination against Ms. Rainer on the basis of her sex.

Before turning to the question of whether the proffered

reasons could be considered a pretext for discrimination, the Court notes, as stated above, that the McDonnell-Douglas analysis of the prima facie case and the burden-shifting which accompanies it is not the only way in which a claim of discrimination is evaluated. Rather, if the plaintiff comes forward with direct evidence of discrimination, including discriminatory comments made by the decision-makers, a triable factual issue can be created.

    Here, Ms. Rainer testified, and swore in her affidavit, that Mr. Maloy, who appears to have been the primary decision-maker concerning her termination, stated on a number of occasions that he needed to have a man in the plant manager's position in order to make Refco more attractive to potential buyers. Refco dismisses this testimony as "self-serving" and argues that it is insufficient to create a genuine factual issue. However, it is the nature of affidavits submitted by parties to litigation to be self-serving. The fact that the person submitting the affidavit has an interest in the outcome of the case which would be furthered by certain statements within the affidavit is not grounds for disregarding the affidavit. Otherwise, where, as here, the alleged discriminatory comments were made only in the plaintiff's presence and without other witnesses, a rule treating the plaintiff's affidavit about those statements as "self-serving" and therefore insufficient to defeat summary judgment would prevent the Court from considering that evidence if the person making the comments simply denied that the events occurred. Courts which have disregarded affidavits on the grounds that they are "self-serving" do so only if the affidavits state facts which are not based on personal knowledge or are conclusory. See, e.g., United States v. Shumway, 199 F.3d 1093, 1103-04 (9th Cir. 1999) (noting that if an affidavit were not "self serving," "there would be no point in...submitting it" and

the self-serving nature of an affidavit "bears on its credibility, not on its cognizability for purposes of establishing a genuine issue of material fact"). Consequently, Ms. Rainer's affidavit (and her deposition testimony, which is entirely consistent with her affidavit) is properly considered as constitute evidence that both Mr. Maloy and, later, Mr. Sekeras, made comments to the effect that Refco's interests would be better served by having a man in the plant manager position. Those comments alone are enough to create a genuine issue of fact with respect to Refco's motivation and to defeat summary judgment.

    On the question of pretext, however, Ms. Rainer has also presented sufficient evidence to create a factual question as to whether the reasons given by Refco for the termination of her employment were the actual reasons. First, the Court can also consider the statements attributed to Mr. Sekeras and Mr. Maloy as evidence that they acted with discriminatory motive rather than out of financial considerations. Second, there are a number of factual disputes surrounding the reasons given by Refco for Ms. Rainer's termination. It is not clear whether the company was experiencing cash flow problems because of a particular order which it had accepted, because of an increase in raw material prices, or because, at least in part, Ms. Rainer was responsible for excessive scrap production. Third, Ms. Rainer's version of the events occurring at the Wellston plant, and the version relied upon by Mr. Maloy, are substantially different. Ms. Rainer claims that she was the victim of insubordination and that management provided her with no assistance. At the same time, however, she was given favorable job reviews, the company's financial performance was strong (a statement that finds support in Mr. Sekeras' February 4, 2005 letter), and Refco did not conduct a thorough investigation into the reasons for morale

11

issues at the Wellston plant but rather a one-sided interview only with those who had complaints against Ms. Rainer. Although it is certainly possible that the complaints were true and that Mr. Maloy made his recommendations based upon his belief that Ms. Rainer's termination was in Refco's best interest, a jury could also conclude that Refco did little to support Ms. Rainer and used employee complaints as a pretextual basis for discharging her and replacing her with a male manager.

These factual disputes concerning the reasons for her termination are heightened by the fact that Refco's interrogatory answers concerning who made the decision to terminate Ms. Rainer, and the deposition testimony, are somewhat at odds. In the interrogatory answers, Refco swore that it was Mr. Sekeras who made the decision. However, the deposition testimony appears to indicate that Mr. Sekeras' decision was simply to reassign Ms. Rainer to a different position, and that it was Mr. Lucas, at the urging of Mr. Maloy, who made the decision to terminate Ms. Rainer's employment altogether. Those facts, coupled with Ms. Rainer's testimony that Mr. Sekeras' demeanor towards her changed dramatically after she suggested that discrimination was occurring, are enough to create a triable factual issue both on the question of whether the reasons given were a pretext for discrimination and whether Refco's position on her employment changed after she advised Mr. Sekeras that she thought discrimination was occurring.

A final note on the Title VII and state law employment claims is appropriate. Refco argues that it is entitled to the benefit of the "same actor" inference that applies when the same person who hired an employee in the protected class is later accused of discriminating against that same employee. The above discussion demonstrates that it is not at all clear that the same person made the decision to make Ms. Rainer plant manager and to

terminate her employment, and she testified that someone other than Messrs. Lucas, Sekeras and Maloy originally hired her. Given the state of the record, the "same actor" inference carries little, if any, weight at this stage of the case.

With respect to Ms. Rainer's FMLA claims, the Court concludes that there is no evidence to support her claim that she was denied any right to leave under the FMLA. Apparently, she requested leave only through February 17, 2005, and such leave was granted. However, there is a factual question as to whether her request for FMLA leave was a motivating factor in her discharge. There is no dispute that she requested FMLA leave on February 4, 2005, and there is evidence from which a jury could find that her request for leave was valid. On the issue of whether there was a causal relationship between Ms. Rainer's request for leave and her termination, the Court notes that, in addition to the evidence showing that Refco's reasons for the termination may have been pretextual, the termination followed on the heels of her FMLA request. As the Court of Appeals recently observed, there are circumstances "where temporal proximity, considered with other evidence...would be sufficient to establish a causal connection" between protected activity and retaliatory conduct. Tuttle v. Metropolitan Government of Nashville, ___ F.3d ___ (6th Cir. January 18, 2007), slip op. at 12. The fact that Refco changed the job action taken from a transfer of responsibilities to termination within two weeks of Ms. Rainer's request for FMLA leave is sufficient enough to create at least an inference that there was a relationship between the two. Again, it will be for the jury to decide whether Ms. Rainer is able to prove via preponderance of the evidence that the discharge was retaliatory, but the jury question exists and prevents the Court from granting summary judgment on this claim.

V.

Finally, Refco has asked the Court to make a determination at this stage of the case that Ms. Ranier is entitled to neither front pay nor reinstatement. As to the latter argument, which is not reiterated in Refco's reply memorandum, the Court's finding that there is a genuine factual issue on the reasons for Ms. Ranier's termination generally precludes a determination that reinstatement would be inappropriate based on the allegedly poor quality of Ms. Ranier's job performance. Thus, the Court will address only the former argument in detail.

Refco acknowledges, and the cases it cites support, the proposition that the amount of front pay to be awarded to a successful Title VII plaintiff is ordinarily a question of fact for the jury. The same is true with respect to the question of whether a plaintiff has exercised due diligence in seeking to mitigate any damages due to lost wages. See Suggs v. Servicemaster Education Food Management, 72 F.3d 1228 (6th Cir. 1996). Citing to Roush v. KFC Nat'l Management Co., 10 F.3d 392 (6th Cir. 1993), however, Refco argues that the entitlement to front pay is a question of law for the Court, and that it must be determined prior to the time that the case is submitted to the jury.

Entitlement to front pay is a legal question, but the determination of that question is usually made with the benefit of the trial record. There may be some cases where that is not necessary. For example, in Roush, it was undisputed that plaintiff's post-termination earnings were either more than what she would have earned had her employment with the defendant not been terminated, or that she voluntarily gave up that level of income by applying for and accepting social security benefits. Here, Refco does not argue that Ms. Ranier actually earned more money after her termination than she would have had she continued

in its employ, but only that she could have, and that her choice not to do so was essentially unreasonable. However, the reasonableness of a plaintiff's effort to mitigate damages is ordinarily a fact question for the jury. Suggs, supra. It may be that after hearing all of the evidence on this issue at trial, the Court could conclude that Ms. Ranier's mitigation efforts were unreasonable as a matter of law. The Court cannot make that determination on this record, however, and will therefore deny Refco's request for summary judgment on the reinstatement and front pay issues.

VI.

Based upon the foregoing, the Court denies plaintiff's motion to strike (#45) and denies defendants' motion for summary judgment (#38) in all respects with the exception of any claim by Ms. Rainer that she was improperly denied leave under the FMLA. This case shall proceed to jury trial as scheduled on March 5, 2007.

/s/ Terence P. Kemp
United States Magistrate Judge